623 So.2d 906 (1993)
Floyd BUGGAGE
v.
YELLOW-CHECKER CAB COMPANY, et al.
No. 93-CA-0404.
Court of Appeal of Louisiana, Fourth Circuit.
August 19, 1993.
Louis A. Gerdes, New Orleans, for plaintiff/appellee.
Leon A. Aucoin and Francis R. White, Aucoin & Unland, Metairie, for defendant/appellant.
Before PLOTKIN, JONES and LANDRIEU, JJ.
PLOTKIN, Judge.
Defendant, the Louisiana Insurance Guaranty Association (LIGA), appeals from the granting of summary judgment in favor of plaintiff Floyd Buggage (Buggage). The issue for review is whether an insurer's pre-insolvency settlement agreement is a "covered claim" within the meaning of the LIGA statutes, such that LIGA is obligated to honor such settlements.
On March 12, 1990, Buggage cut his arm while exiting a taxicab. Buggage filed suit July 31, 1990, against the owner of the taxicab, Yellow-Checker Cab Company (Yellow-Checker), and the driver of the cab, Helen D. Martin (Martin). Buggage later amended his petition to include a claim against Yellow-Checker's *907 liability insurer, COMCO Insurance Company (COMCO).
COMCO settled with Buggage for $3,800, and issued Buggage a check for this amount. At some point unclear from the record, COMCO became insolvent. On September 23, 1992, Buggage filed an amended petition adding LIGA as a defendant. In his amended petition, Buggage alleged that COMCO's check had been dishonored by a bank due to COMCO's insolvency and that LIGA had subsequently refused to honor the check. LIGA filed an exception of no cause of action. Buggage then filed a motion for summary judgment.
Hearing on both motions was held December 4, 1992. Judgment was rendered January 5, 1993, granting Buggage's motion for summary judgment and denying LIGA's exception of no cause of action. Written reasons were not assigned.
LIGA brought this appeal, arguing that Buggage's settlement with COMCO was not a "covered claim" within the meaning of the LIGA statutes. Buggage countered with a motion to dismiss and a request for penalties and attorneys' fees, arguing that this case is indistinguishable from our recent decision in Lastie v. Warden, 611 So.2d 721 (La.App. 4th Cir.1992), writ den. 614 So.2d 64 (La.1993), where two plaintiffs injured in an automobile accident confected a settlement with an insurance company which later became insolvent. Finding Lastie dispositive of the issue before us, we affirm.
As LIGA admits in brief, Lastie is the only case which has considered LIGA's responsibility under a pre-insolvency settlement. In Lastie, we framed the issue as follows: "[W]hether LIGA is obliged to honor a compromise confected in good faith by an insurer prior to that insurer's insolvency, regardless of whether LIGA may have a valid defense to coverage under the policy." Id. at 722. We concluded that LIGA was required to comply with a settlement agreement entered into in good faith by the insolvent insurer. Id.
In Lastie, we noted that under La.R.S. 22:1382(A)(2), LIGA is "deemed the insurer to the extent of its obligations on the covered claims and to such extent shall have all the rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent." Thus, if the claim is a "covered claim," LIGA occupies the same position as the insolvent insurer vis-a-vis the claimant. Weaver v. Kitchens, 556 So.2d 120, 122 (La. App. 5th Cir.1990).
However, LIGA notes that its liability under La.R.S. 22:1382 is limited to statutorily defined "covered claims." Additionally, LIGA notes that La.R.S. 22:1379(3)(d), provides that:
"Covered claim" shall not include any claim based on or arising from a pre-insolvency obligation of an insolvent insurer, including but not limited to contractural attorneys' fees and expenses, statutory penalties and attorneys' fees, court costs, interest and bond premiums, or any other expenses incurred prior to the determination of insolvency.
Drawing from this language and that of La. R.S. 22:1379(3)(a), supra, LIGA argues that "[a] compromise is not a `covered claim' because it is a pre-insolvency obligation of the insolvent insurer and does not arise out of an insurance policy." Thus, because the settlement agreement is not a "covered claim," LIGA argues that it is relieved of any liability for the agreement. We disagree.
A "covered claim" under La.R.S. 22:1379(3)(a) is "an unpaid claim ... which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy" (emphasis added). Undoubtedly, Mr. Buggage's claim for his injury "arises out of" and is "within the coverage" of the defendant's insurance policy. Thus, it is a "covered claim."
LIGA's argument attempts to characterize a settlement as an obligation separate from the claim itself. However, a settlement is merely the method in which a claim is negotiated and satisfied by the parties prior to trial. The fact that a claim is agreed to immediately by the insurer, or negotiated over a period of time, does not negate the fact that the claim arose out of the insurance policy and is therefore a "covered claim" under La.R.S. 22:1382.
Additionally, LIGA's argument that the settlement of a claim is a "pre-insolvency obligation" under La.R.S. 22:1379(3)(d) has *908 no merit. When one analyzes the illustrative list in La.R.S. 22:1379(3)(d), it is clear the statute relieves LIGA of liability for obligations incurred by the insurer for the purpose of, or as a cost of, doing business. The purpose of LIGA is to protect legitimate claimants from suffering severe economic consequences when an insurer becomes insolvent. These obligations are separate and apart from the obligations into which the insurance company enters with the insured via the insurance policy. Thus, as the statute states, LIGA is not responsible for the debts of the company, i.e. pre-insolvency obligations of the company, which are not related to the obligations of the insurer under the insurance policy.
Having decided this case on the merits, we decline to grant Buggage's motion to dismiss and request for penalties and attorney's fees. Lastie was handed down after the instant case came for hearing, but before the trial court rendered judgment. In addition, the Louisiana Supreme Court denied writs in Lastie on February 19, 1993, some six weeks after the trial court rendered judgment in this case. 614 So.2d 64, supra. Finally, while Lastie is dispositive of this matter, Lastie did not directly address the issue presented here. Considering these circumstances, we decline to award penalties and attorney's fees.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.