633 So.2d 891 (1994)
Ronnie LeBLANC and Carles LeBlanc, Individually and on Behalf of Their Minor Son, Ronnie P. LeBlanc, Jr.
v.
FIDELITY FIRE & CASUALTY INSURANCE COMPANY, Calvin J. Smith, Jr. and Calvin "Jimmy" Smith, Individually and on Behalf of His Minor Son, Calvin J. Smith, Jr., and Allstate Insurance Company.
No. 93 CA 0146.
Court of Appeal of Louisiana, First Circuit.
March 11, 1994.
*892 David J. Shea, Houma, for plaintiffs-appellants Ronnie LeBlanc and Carles LeBlanc.
Kenneth B. Givens, Houma, for defendant-appellee Allstate Ins. Co.
J. Dana Ortego, Houma, for defendants-appellees Calvin Smith et al. and LA Ins. Guar. Ass'n.
Before LOTTINGER, C.J., and CRAIN and LeBLANC, JJ.
CRAIN, Judge.
This is an appeal from a judgment in a personal injury action arising from an intersectional collision between an automobile and bicycle in the city of Houma.
On July 2, 1990, at approximately 6:00 p.m., Calvin J. Smith, Jr. was driving his 1981 Datsun 200 SX automobile in an easterly direction on Lashbrook Street. Smith approached the intersection of Lashbrook and Louisiana Highway 56, a two-lane highway which runs in a north-south direction. The intersecting streets form a "T" intersection, with La. 56 being the favored street and forming the top of the "T." At the intersection Lashbrook is governed by a stop sign. Smith stopped at the stop sign intending to make a right turn, onto the southbound lane of La. 56. Ronnie Paul LeBlanc, Jr. was heading home from work, riding his bicycle in a northerly direction on the shoulder of the southbound lane of La. 56, riding against traffic. LeBlanc saw that the Smith vehicle was stopped at the stop sign, but nevertheless proceeded across Lashbrook Street in front of the Smith vehicle. At the same time, Smith began making his right turn. As the bicycle crossed Smith's path, a collision ensued, the left front bumper of Smith's vehicle colliding with LeBlanc's bicycle. As a result of the accident, LeBlanc suffered a fractured tibia and fibula of his left foot and ankle. There was no noticeable damage to the Smith vehicle and only minor scratches to LeBlanc's bicycle. At the time of the accident LeBlanc was 16 years old and Smith was approximately 17 years old.
This action was instituted by Carles and Ronnie LeBlanc on their own behalf and on behalf of their minor son, Ronnie, against Calvin "Jimmy" Smith individually and on behalf of his minor son, Calvin, Jr.; Fidelity Fire & Casualty Co. (Fidelity), the Smiths' liability insurer; and Allstate Insurance Co. (Allstate), the LeBlancs' UM insurer. Fidelity was subsequently declared insolvent on September 4, 1991 and by amended petition the Louisiana Insurance Guaranty Association (LIGA) was substituted as a named defendant. Plaintiffs also sought statutory penalties, interest and attorney fees from Allstate for Allstate's alleged arbitrary and capricious handling of the case.
After a bench trial on the merits judgment was rendered in favor of defendants. From this judgment plaintiffs appeal assigning as error:
I. The trial court erred in not finding fault on the part of Calvin Smith.
II. The trial court erred in not finding that Allstate was arbitrary and capricious.
III. The trial court erred in not finding that LIGA was bound by the settlement made between plaintiffs and Fidelity Fire.

*893 IV. The trial court erred in not awarding the plaintiffs damages.

FAULT OF SMITH
In the first assignment of error appellants contend that some degree of fault should have been assessed against Smith. Plaintiffs do not allege that no fault should be attributed to LeBlanc.
In written reasons for judgment the trial court found (and it was uncontested) that LeBlanc was riding against traffic on the southbound shoulder of La. 56. LeBlanc admitted he saw the Smith vehicle stopped at the intersection and could have timely stopped his bike prior to entering the intersection, thus avoiding the accident, but failed to do so. The court determined that pursuant to the statutory law and jurisprudence, the rider of a bicycle is subject to the same traffic laws and duties as a motorist, and stated:
Based on the law and evidence presented at trial, this court is of the opinion that plaintiff was negligent for operating his bicycle on the left-hand side of the road and is therefore the proximate cause of this accident. This court believes that plaintiff did not keep a proper lookout and made no effort to avoid the collision. The defendant looked both ways and forward again. Seeing his way clear, he entered the intersection after coming to a complete stop. He did not have a duty to anticipate that plaintiff would violate the law by riding his bicycle on the wrong side of the street.
"Every person riding a bicycle upon a highway of this state shall be granted all of the rights and shall be subject to all the duties applicable to the driver of a vehicle by..." the Highway Regulatory Act. La.R.S. 32:194. "Every person operating a bicycle upon a roadway shall ride as near to the right side of the roadway as practicable, exercising due care when passing a standing vehicle or one proceeding in the same direction." La.R.S. 32:197(A). Generally, all vehicles must be driven on the right half of the roadway. La.R.S. 32:71. Thus, LeBlanc should not have been traveling north on the shoulder of the southbound lane of La. 56.
The driver of a vehicle approaching an intersection marked by a stop sign has the duty to stop:
"at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard."
La.R.S. 32:123(B). A motorist stopped in obedience to a stop sign at an intersection has the additional duty to carefully evaluate the traffic conditions in the intersection and to refrain from entering the intersection in the face of obvious or possible danger. Aucoin v. Fidelity General Insurance Co., 219 So.2d 532 (La.App. 3d Cir.), writ refused, 253 La. 1095, 221 So.2d 521 (1969).
At this particular intersection and under the facts and circumstances present in this case, the trial court determined that Smith was under a more compelling duty to check to his left for southbound oncoming traffic, than to check for bicycle traffic proceeding from the right shoulder. See Mugnier v. Checker Cab Co., 309 So.2d 747 (La. App. 4th Cir.1975). Smith had the directional right-of-way and had the right to assume traffic laws would be obeyed and a bicyclist would not approach the intersection on La. 56 from the wrong direction. Smith was entitled to this assumption until he saw or should have seen that the other vehicle had not observed or was not going to observe the traffic laws. Crump v. Ritter, 583 So.2d 47 (La.App. 2d Cir.), writ denied, 588 So.2d 1113 (La.1991); Snyder v. Taylor, 523 So.2d 1348 (La.App. 2d Cir.), writs denied, 531 So.2d 267, 268 (La.1988). LeBlanc had the duty to anticipate that Smith would either not look in LeBlanc's direction or would not see LeBlanc if Smith looked in that direction.
Smith testified by deposition that he looked to the left, right, then to the left again, and lifted his foot from the brake pedal. He stated he first saw LeBlanc when LeBlanc was about 10 feet from Smith's vehicle. *894 Smith immediately braked but could not avoid the collision. At no time had he touched the accelerator pedal. The guest passenger in the Smith vehicle, an acquaintance and friend of both LeBlanc and Smith, corroborated this testimony. Likewise did the testimony of LeBlanc himself.
The trial court obviously resolved the credibility issues in favor of Smith and found no breach of duty, if any, owed the plaintiffs. It also apparently found the cause of the accident to be solely the fault and actions of LeBlanc. Our supreme court has stated that where a reasonable factual basis exists in the record for the factual findings of a jury or trial court an appellate court may not reverse even if it would have viewed the evidence differently. Further, where two permissible or reasonable views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous. Stobart v. State, Department of Transportation and Development, 617 So.2d 880 (La.1993).
A review of the record reveals the existence of a reasonable basis for the findings of the trial court and as such they are not manifestly erroneous.

ENFORCEMENT OF SETTLEMENT
In the third assignment of error plaintiffs contend that they had entered into a settlement with Fidelity, as memorialized in a FAX transmission from plaintiffs' counsel to Ms. Kathi Carter, Fidelity claims adjuster. Citing Lastie v. Warden, 611 So.2d 721 (La. App. 4th Cir.1992), writ denied, 614 So.2d 64 (La.1993), plaintiffs contend the trial court erred in failing to enforce the settlement agreement.
LIGA cannot avoid honoring a valid compromise previously confected between its predecessor in interest and other parties to pending litigation, absent any fraud or error sufficient to invalidate a compromise between parties. Lastie v. Warden, 611 So.2d at 723.
Plaintiffs apparently never received the requested settlement documents, the check, or any followup from Fidelity or Ms. Carter.[1] Plaintiffs' counsel stated at trial that plaintiffs:
subpoenaed or attempted to subpoena Fidelity Fire adjusters. They didn't show up, nor were they served. I don't think Fidelity Fire's office was opened for business when the subpoena request went out. I would like to introduce a document that I faxed on June 17, 1991 to Fidelity Fire talking about the settlement of the case.... They had offered nine thousand, then they offered whatever. When they got the ten thousand I got a phone call from Mrs. Carter that indicated she was willing to pay the ten thousand dollar policy limits. I tried to call her back. I faxed her a letter.
A transaction or compromise must be either reduced to writing or recited in open court. La.C.C. art. 3071. The purpose of the writing requirement is "to serve as proof of the agreement and the acquiescence therein." Bourgeois v. Franklin, 389 So.2d 358, 361 (La.1980). It has been held by the supreme court that the requirement implies that the agreement be evidenced by documentation signed by both parties. However, the requirement is satisfied when the signed offer and acceptance are contained in separate writings so long as when read together the instruments outline each party's obligations to the other and evidence each party's acquiescence in the agreement. Felder v. Georgia Pacific Corp., 405 So.2d 521 (La. 1981).
In Lastie, 611 So.2d 721, there was no question that the insolvent insurer had entered into a valid compromise with the plaintiff prior to the insurer being declared insolvent. The issue before the court was whether LIGA could be required "to honor a compromise confected in good faith by an insurer prior to that insurer's insolvency, regardless of whether LIGA may have a valid defense to coverage under the policy." Id. at 722.
In the case before us there has been no proof of the existence of a valid compromise in compliance with La.C.C. art. 3071 *895 and Felder v. Georgia Pacific Corp., 405 So.2d at 521. There has been no recitation in open court by Fidelity or LIGA regarding the validity of the alleged compromise or that a final compromise had indeed been reached. Further, no writing sufficient to comply with the writing requirement of La.C.C. art. 3071 was introduced. Accordingly, this assignment is without merit.
Having affirmed the judgment of the trial court determining the accident to have been caused solely by the fault of LeBlanc and that there had been no valid compromise, we need not address assignments of error numbers 2 and 4. Costs are assessed against plaintiffs.
AFFIRMED.
NOTES
[1] The letter was not admitted as evidence. It was proffered as evidence by plaintiffs. However, plaintiffs did not assign as error the trial court's refusal to admit the letter as evidence. Thus it cannot be considered as evidence on appeal.